UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
DAVID LEBRON,

                              Plaintiff,                    **COMPLAINT**

          -against-                                    '10 CIV 02868

ANTHONY J. FURCO, individually,
GEORGE O. DARDEN, individually,
NORAMIE F. JASMIN, individually,
PHILIP M. ROSENTHAL, individually,
BETTIE J. BROWN, individually,
JOSEPH A. DESMARET, individually, and the
VILLAGE OF SPRING VALLEY, New York,

          -AND-

VILLAGE OF SPRING VALLEY, VILLAGE OF SPRING
VALLEY POLICE DEPARTMENT, CHIEF PAUL MODICA,
LT. JOHN BOSWORTH, LT. RICHARD OLESZCZUK,
DET. SGT. DEREK SAVINO, DET. ROXANNE LOPEZ,
DET. EDWARD HUGHES, SGT. JAMES NOBLE,
P.O. OSCAR LOPEZ, SGT. MARK CIVITA,
SGT. RAYMOND NIKISHER, P.O. JOHN VESPUCCI,
DET. PETER CLAUSSEN, all individually and in their
official capacities,

          -AND-

COUNTY OF ROCKLAND, OFFICE OF THE ROCKLAND
COUNTY DISTRICT ATTORNEY, THOMAS P. ZUGIBE, and
GARY LEE HEAVNER, all individually and in their
official capacities,

                              Defendants.
-------------------------------------------------------------------------------X

          Plaintiff, DAVID LEBRON, by his attorneys YOUNG & BARTLETT, LLP, for

his Complaint states the following:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:_____
DATE FILED:_____

1

## INTRODUCTION AND GENERAL ALLEGATIONS

**FIRST:**        This is a complex civil rights action occurring over several
years and continuing which has three separate yet interrelated sections as
indicated in the manner in which the caption is styled and delineated with "And" for
the Court and parties convenience.

The first part involves claims under Title VII and under the Fourteenth
Amendment of the United States Constitution, 42 U.S.C. 2000e *et seq.*; 42 U.S.C.
1981; the Equal Protection Clause of the United States Constitution; 42 U.S.C. §
1983 as well as a claim pursuant to this Court's supplemental jurisdiction alleging
that Plaintiff's rights guaranteed by § 296 *et seq.* of the New York State Executive
Law were violated.

As will be made clear by the detailed factual allegations and in the first four
causes of action, Plaintiff alleges that defendant, VILLAGE OF SPRING VALLEY,
violated Title VII and the VILLAGE OF SPRING VALLEY, as well as the individual
defendants, ANTHONY J. FURCO, GEORGE O. DARDEN, NORAMIE F. JASMIN,
PHILIP M. ROSENTHAL, BETTIE J. BROWN and JOSEPH A. DESMARET,
violated the above cited Statutes.  See first four causes of action.

**SECOND:**    The second section of Plaintiff's claims is an action for money
damages brought pursuant to 42 U.S.C. §§ 1983, 1985(3) and the First, Fourth,
Fifth and Fourteenth Amendments to the Constitution and under the Common Law
of the State of New York.

**THIRD:**        The third section of Plaintiff's Complaint follows Plaintiff, Police
Officer DAVID LEBRON, acquittal of all criminal charges and takes place in the

Spring Valley Police Department at Plaintiff's Departmental hearings in May 2009 and continuing through October 2009.

At this time Rockland County A.D.A. Gary Heavner having tried and lost the criminal prosecution against Plaintiff appeared at Plaintiff's Departmental trial and sat for numerous days watching Plaintiff and others testify.

Upon information and belief, Mr. Heavner conspiring with the Village and its Police Department submitted a warrant application to local Spring Valley Judge Allan Simon to seize Plaintiff's cell phone and extract all information on the phone together with all

> "Stored electronic communications, digital files and data; including but not limited to call history, address book information, text messages, digital photographs and videos, calendar entries and all other current or historical digital or electronic information normally stored within a cellular telephone or its memory in any format."

A.D.A. Heavner had clearly stepped outside of his prosecutorial duties and was acting as a fact finder to assist the Village of Spring Valley and its Police Department in their conspiracies against Plaintiff, DAVID LEBRON.

<u>**JURISDICTION**</u>

**FOURTH:**    This action is brought pursuant to 42 U.S.C. § 1983 and § 1985, 1981, 2000e *et. seq.* and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded upon 28 U.S.C. § 1331 and § 1343 and the aforementioned statutory and constitutional provisions.  Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367, to hear and decide any and all claims arising under State law.

With respect to Plaintiff's Title VII claim, on or about June 2, 2006, he duly filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission.  On December 21, 2006, the Civil Rights Division of the United States Department of Justice issued to him a Notice of a right to sue.

## VENUE

**FIFTH:**      Venue is proper in the Southern District of New York pursuant to 28 U.S.C.§1391.

## FACTUAL SUMMARY AND CORE ALLEGATIONS

**SIXTH:**      The Plaintiff, DAIVD LEBRON, is a Hispanic American who is bilingual and is a member of the Spring Valley Police Department.  He is in a protected class and is one of only a small minority of certified bilingual police officers in the Spring Valley Police Department (herein after referred to as the Department).

**SEVENTH:**   The Department is controlled and operated by various individuals who have manipulated the paramilitary chain of command and operations of The Department for their benefit and the benefit of a select group of old-line "white" police officers who constitute the majority of the members of police force in The Department.

**EIGHTH:**      The head of the Spring Valley Police Department is Chief Paul Modica.

**NINTH:**      The following individuals are all alter egos and subordinates of Chief Paul Modica and their acts, omissions and violations are acts of Chief Modica:

Anthony Furco;

John Bosworth;

Richard Oleszczuk;

Derek Savino;

Roxanne Lopez;

Edward Hughes;

James Noble;

Oscar Lopez;

Mark Civita;

Raymond Nikisher;

John Vespucci;

Peter Claussen.

**TENTH:**    The foregoing individuals include four of the top five commanding officers within The Department.

a.    The Defendant POLICE CHIEF MODICA was at all times material to this action the duly elected and acting Police Chief of the Village of Spring Valley.

1.    Chief Modica is charged with the formulation of directives and policies complained of below and is sued in his individual and official capacity.

At all relevant times the individual Police Officers listed above were acting within the scope of their employment by the municipality, the Village of

Spring Valley, committing the acts complained of under the color of State Law. These officers are sued in their individual and official capacities.

b.      Defendants, LT. JOHN BOSWORTH, LT. RICHARD OLESZCZUK, DET. SGT. DEREK SAVINO, DET. ROXANNE LOPEZ, DET EDWARD HUGHES, SGT. JAMES NOBLE, P.O. OSCAR LOPEZ, SGT. MARK CIVITA, SGT. RAYMOND NIKISHER, P. O. JOHN VESPUCCI, DET. PETER CLAUSSEN, are individuals who at the times relevant to this action, were and are employed as Police Officers (Captain, Sergeant etc.) and at all times relevant were acting in that capacity and under the color of state law; and they are being sued in their individual and official capacity.

c.      At all relevant times the individual Police Officers were acting within the scope of their employment by the municipality, THE VILLAGE OF SPRING VALLEY.

**ELEVENTH:**      Various members of the Police Department listed above, as well as other unnamed officers, have through various years become indebted and obligated to the Village and Chief Paul Modica by virtue of his exercise and his authority through The Department for corrupt purposes, including but not limited to the following:

a.      Obstructing justice and otherwise covering up crimes or other criminal activity of members of the Police Department and their spouses, relatives, friends and associates;

b.      Obtaining information of a privileged nature or confidential nature concerning members of The Department or other individuals in the community and

thereby using such information for improper purposes, including obstruction of justice, abuse of civil rights of individuals, and attempting to exert control and dominion over the police department, its members, businesses and individuals living within the jurisdiction of The Department.

## COMMAND STRUCTURE OF THE SPRING VALLEY POLICE DEPARTMENT

**TWELFTH:**  At all times relevant herein, the Spring Valley Police Department is a paramilitary organization existing and operating within Rockland County in the municipality of Spring Valley in the State of New York.

**THIRTEENTH:**     The Defendant CHIEF PAUL MODICA is the commanding officer and highest official within The Department and assumed his position on or about April 2007 through to the present.

**FOURTEENTH:**     At all times relevant herein, the Spring Valley Police Department has approximately 72 officers, including upper-level management, broken down in the approximate following categories:

        a. One chief;

        b. Three lieutenants;

        c. One detective sergeant;

        d.  Eight to ten sergeants;

        e. Ten detectives;

        f. The remainder will be patrolmen.

**FIFTEENTH:**     At all times relevant herein, the majority of the command structure of the Police Department is controlled by Chief Paul Modica and has been corrupted and bent to serve his unlawful and illegal purposes and

otherwise to protect subordinate officers in a manner that violate the constitutional rights of the public and the obligations of the officers to discharge the rule of law in their jurisdiction; and otherwise said individuals have engaged in a course of conduct to obstruct justice, falsify evidence, discriminate against individuals, violate the civil rights of protected classes of individuals existing, living and doing business within their jurisdiction; and otherwise to exert dominion and control over officers within The Department in violation of the civil rights of said officers and other rights of said individuals protected under various laws, rules and regulations of the State of New York and the United States of America.

## THE PARTIES AND CERTAIN FACTS

**SIXTEENTH:**        Plaintiff DAVID LEBRON is a citizen of the United States, a domiciliary of the State of New York, and a resident of the City of New York.  He is Hispanic, fluent in the Spanish language, has a B.S. in Criminal Justice, Police Science and a B.A. in Spanish, and at all times relevant to this complaint was employed by Defendant Village as one of its two full time Police Officers state-certified in Spanish.

**SEVENTEENTH:**    At all times relevant herein, the Defendant Department has had limited fluency in the Spanish language.  In particular, officers historically have not been ethnically diverse and have lacked the ability to read, write or speak the Spanish language.

**EIGHTEENTH:**      At all times relevant herein, the Plaintiff DAVID LEBRON was hired by the Spring Valley Department in or about 1998 as a certified Spanish-speaking officer authorized by the State of New York and police

departments within the State of    New York to translate and record testimony and statements of witnesses, victims and defendants in criminal proceedings or other proceedings brought by individuals to the attention of the Spring Valley Police Department.

**NINETEENTH:**        At all times relevant herein, the Plaintiff DAVID LEBRON brought to the attention of the Defendants that they had improperly violated procedure by taking statements from victims, witnesses and defendants who spoke the Spanish language and whose statements were incorrectly translated  and otherwise recorded incorrectly.

**TWENTIETH:**        As a proximate result of his ethnicity, national origin and because Plaintiff complained that the Spring Valley Police Department did not use certified Spanish/English translators which resulted in peoples rights being violated, during his tenure with the Village Plaintiff has been subjected to disparate treatment including inter alia:

a.  Being reprimanded for having a single accident with a police vehicle, in contrast to at least one female African-American officer who with impunity has had multiple motor vehicle accidents with such vehicles.

b.  Being in-writing counseled with respect to his sick time usage, in contrast to his male Caucasian counterparts who with impunity have used substantially more sick time than Plaintiff.

c.  Being in-writing counseled with respect to his productivity in issuing traffic tickets, in contrast to his male Caucasian counterparts who with impunity have had considerably lower productivity in that respect.

f.   Being skipped for appointment as a Field Training Officer in favor of a male officer of Haitian national origin with one-third the police experience as Plaintiff.

**TWENTY-FIRST:**    Defendant ANTHONY J. FURCO (hereinafter "Furco"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Chief of Police of the Defendant Village.  With respect to departmental and/or appointments Furco recommends individuals to the Village Board which in turn and by rote routinely makes the final administrative determination(s) as requested by Furco.

**TWENTY-SECOND:**       Defendants GEORGE O. DARDEN, NORAMIE F. JASMIN, PHILIP M. ROSENTHAL, BETTIE J. BROWN, JOSEPH A. DESMARET (hereinafter collectively referred to as the "Village Board") respectively were the Mayor, Deputy Mayor and Trustees of the Defendant Village and as such constitute its duly elected legislative body. Defendant VILLAGE OF SPRING VALLEY, New York (hereinafter "Village") is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said state.

## UNDERLYING FACTS: FAILURE TO PROMOTE

**TWENTY-THIRD:**       Following years of service in the New York City Police Department, on or about March 11, 1998,   Plaintiff was hired by the Village at a time its  then Chief of Police (John Kelly) appreciated the need to hire Police Officers state-certified in Spanish given the ever growing Hispanic population  in the community  At or about the same time and also under Kelly's tenure, a second

officer (Marta Rodriguez), who too was state-certified in Spanish,  was also hired--
having served as a member of the New York City Police Department.

**TWENTY-FOURTH:**        Upon Kelly's retirement, Furco was promoted by
the Village Board as his successor.   Unlike Kelly and despite the ever-increasing
Hispanic constituency in the Village, Furco, has for years declined and/or refused
to utilize the services of either state-certified officers-- instead utilizing as
translators for Spanish speaking criminal defendants:

    a.   A Police Officer of Haitian national origin, Simon Funvil, who attempts
to communicate in broken Spanish (having never been state tested and/or certified
in that language), and,

    b.   A Police Officer of Portuguese national origin, George Marciano, who
attempts to communicate in broken Spanish.

**TWENTY-FIFTH:**      During Furco's tenure and upon his recommendation,
the Village Board repeatedly promoted only male Caucasians including:

               i.   Steven Levy, who at the time was promoted to Detective
Sergeant had averaged  between thirty (30) and forty (40) sick days per year.

               ii.   Edward Hughes, who at the time he was promoted to
Detective, averaged approximately twenty-six (26) sick days per year.

               iii.   Daniel McWilliams, who at the time of his appointment as
Sergeant had over the preceding four years utilized one hundred thirty-nine (139)
sick days.

**TWENTY-SIXTH:**     In November of 2005 and following Plaintiff's placement
on a certified civil service eligible list as the number "1" ranked candidate for

promotion to Sergeant, interviews for that position were concluded, as a result of which:

      a.  The male Caucasian who ranked  number "2" on the subject list, McWilliams, was promoted despite his use of one hundred thirty-nine (139) sick days,

      b.  Plaintiff, who had taken but fifty-four (54) sick days in the preceding four (4) years, was skipped for promotion in favor of an individual whose use of sick time during that period of time was only slightly less than Plaintiff's.

      c.  Despite Furco's pronouncement that consideration for promotion in substantial respect depended upon the successful candidate's minimal use of sick time: "I don't care whether you are sick legitimately or not.  I need Sergeant's who are going to be here."

      **TWENTY-SEVENTH:**     Thereafter in December of 2005, Plaintiff was again skipped for promotion, in favor of another male Caucasian, John Kiernan, who according to department promotional standards was lesser qualified.

## CRIMINAL AND DEPARTMENTAL CHARGES

      **TWENTY-EIGHTH:**     Subsequent to February 18, 2007, the Defendants engaged in a concerted effort to produce evidence, albeit false, untrue, and untrustworthy, showing that Plaintiff engaged in illegal, immoral or conduct unbecoming of a police officer.

      **TWENTY-NINTH:**  Attempts to gather such false information included, but was not limited to pressuring individuals, some of whom were suspects of their

own criminal activity, into providing false and misleading accounts of their

encounters with Plaintiff.

**THIRTIETH:**     On or about November 2, 2007, the Defendants

charged Plaintiff with numerous crimes including inappropriate sexual conduct.

Those allegations were false.

**THIRTY-FIRST:**     Based upon the aforementioned allegations, the

Plaintiff was indicted by a Grand Jury.  This indictment was later dismissed by a

Judge who stated in part:

> "The District Attorney inappropriately introduced hearsay
> testimony and documentation without establishing a proper foun-
> dation.  Finally, the identification testimony offered by one of the
> witnesses to this Grand Jury was questionable at best."

**THIRTY-SECOND:**     As a result of the arrest, Plaintiff was

incarcerated on November 2, 2007 for a period of three (3) days.

**THIRTY-THIRD:**    In an effort to further harass and silence the Plaintiff, he

was suspended from duty without pay and charged with eighty-eight administrative

violations.  The Defendants have also resubmitted all of the charges to a

subsequent Grand Jury and included one or more new charges.  This was done in

bad faith and without probable cause.

**THIRTY-FOURTH:**     As a proximate result of Defendants' intentional

discrimination against Plaintiff by reason of his ethnicity and natural origin,

Plaintiff has been forced to endure:  Pecuniary losses both past, present and

future; public humiliation; impairment of his professional career;  impairment of his

professional and personal   reputations; public embarrassment; shame; emotional

upset; anxiety; and has otherwise been rendered sick and sore.

13

**THIRTY-FIFTH:**   Subsequent to the complaints the Plaintiff made to the Defendants and the filing of claims for violation of the civil rights of the Plaintiff, the Defendants, their alter egos and other individuals acting on their behalf and in concert with them, jointly and severally engaged in conduct of a torturous and criminal nature constituting acts of retaliation in violation of the civil rights laws and non-discrimination laws existing in the State of New York and the United States of America, including but not limited to violations of 18 U.S.C. 1983 et seq.

**Chief Paul Modica**

**THIRTY-SIXTH:**   Chief Paul Modica engaged in acts constituting obstruction of justice, mail fraud, wire fraud and conspiracy by virtue of the following conduct:

**THIRTY-SEVENTH:**   At various times during the calendar year 2007 Chief Paul Modica conspired with the core group of individuals in command of The Department in order to "set up and frame and otherwise falsify evidence against the plaintiff."

**THIRTY-EIGHTH:**   In further instance of such conspiracy, Chief Paul Modica engaged in multiple communications on the telephone, cell phone and upon information and belief via the internet, and all of such acts constitute wire fraud as defined by 18 U.S.C.A. § 1343.

**THIRTY-NINTH:**   During such communications, Chief Paul Modica gave instructions, directions and commands to the core group of individuals, as well as underlings who are named herein, as well as other unnamed parties who carried out his commands and directions.  All of said communications with regard to the

Plaintiff DAVID LEBRON were designed to fabricate evidence, create a false impression with regard to communications; alter communications and evidence already obtained; obstruct justice; divert attention from other criminal activity and improper conduct on the part of Chief Paul Modica and the other Defendants herein.

**FORTIETH:**  In addition to the forgoing, Chief Paul Modica in or about May 2007 conspired and sought to induce Police Officer John Vespucci to prepare and file a false police report.  Defendant MODICA further sought to have a false police report filed in an attempt to induce and entrap the Plaintiff to confirm the same and thereby create a trumped-up and false charge against the Plaintiff of falsifying a business record.

**FORTY-FIRST:**      Defendant MODICA further has withheld evidence, obstructed justice and provided false testimony under oath in various proceedings, including but not limited to criminal cases brought against the Plaintiff in the County Court, Rockland County.

**FORTY-SECOND:**  Coordinating and suborning perjury and filing of false statements by actively coordinating and directing his subordinates to file depositions and to provide false testimony and make false accusations against the Plaintiff DAVID LEBRON in connection with criminal charges that were filed against him in the County Court Rockland County,  docket/indictment numbers 465-2007 and 495-2008.

**FORTY-THIRD:**      Orchestrating and coordinating the destruction of evidence in or about May 2007 in the possession of the Spring Valley Police

**FORTY-EIGHTH:**    Chief Modica's efforts against Officer Lebron continue to the present date and certainly at least since Officer Lebron's acquittal of criminal charges in November 2009 all actions of Chief Modica were done with the consent of the Mayor and Village elected Officials.

**FORTY-NINTH:**    Following the acquittal of David Lebron in November 2009 the Village of Spring Valley together with the Spring Valley Police Department and the Rockland County District Attorney's Office acted jointly and conspired to further deprive Officer Lebron of his Constitutional rights and protections.

**FIFTIETH:**    In fact the aforesaid defendants arranged for A.D.A. Gary Heavner to be present during the administrative hearing of David Lebron in order to intimidate him and to exert pressure on him to resign as a police officer.

**FIFTY-FIRST:**    It was Chief Modica who orchestrated and put pressure upon the individually named police officers as well as the various citizens referred to in the Complaint to bring false charges against Officer Lebron.

**FIFTY-SECOND:**    In fact during the Paul Modica's tenure as a police officer in Spring Valley he was personally guilty of conduct greater than that of which David Lebron was accused of, including but not limited to the following:

a.    Chief Paul Modica used police department car to take his son to an out of State hockey game and totaled the car.  This was in violation of Police Department rules.  No charges were brought against Chief Modica by the Police Department or the Village Mayor or elected Officials.

b.     During Chief Modica's employment, he would sleep in his police vehicle at various locations and prefer to do so at the American Tack and Hardware in Spring Valley.

c.     During Chief Modica's employment, he was aware that prostitutes were to be hired at a bachelor party of an individual known as "Moti" who was a personal friend of Chief Modica.  Chief Modica took no action against anyone regarding this incident and chose to ignore this criminal activity.

**FIFTY-THIRD:**     Engaged in numerous other acts, omissions and instances of conduct designed to falsify evidence, create a false impression, suborn perjury and otherwise engaged in illegal conduct. The lay people whom the defendants coerced to provide false statements include but are not limited to the following: Freddie Arias, Juan Carlos Benjamin, Eric Canto, Yerida Diaz, Johnnie Estrada, Cheryl Flores, Indira Flores, Dania Majica Gomez, Sujelis Gomez, Vera Houston, Linda Jose, Edgar Mazariegos, Oliverio Miranda, Yanilka Miranda, Daniel Monzon, Macabeo Palma-Alarcon, Marco Palma, Jessica Ramirez, Jose Rivera, Ericka Rosero, Edgar Salazar, Sirjan Salazar and  Dobromir Valkov.

### Lieutenant Richard Oleszczuk.

**FIFTY-FOURTH:**     Lieutenant Richard Oleszczuk  conspired with Chief Modica and the other core individuals in command of The Department by seeking to induce false testimony from said witnesses and extorting the same from them under threat of filing of criminal charges against said witnesses:  In the following regard, Lieutenant Oleszczuk and other individuals in The Department conspired to hold criminal charges over the heads of certain individuals, attempted to

18

induce said individuals to provide false testimony against the plaintiff and otherwise sought to advise said individuals that they would receive leniency or favoritism with regard to pending criminal or other charges against them if they provided false testimony against the Plaintiff and otherwise attributed conduct to the Plaintiff constituting a violation of his duties as a Spring Valley Police Department officer.

**FIFTY-FIFTH:** All of the foregoing individuals were requested, directed, induced and/or coerced to give false testimony against the Plaintiff or to corroborate testimony of a perjurious nature given by other witnesses in order to substantiate the false claims and charges filed by The Department and the other Defendants against the Plaintiff.

**FIFTY-SIXTH:** Lieutenant Richard Oleszczuk was present with Chief Modica and John Vespucci and has been tape-recorded as cooperating with the efforts of Chief Modica as documented in a May 2007 tape recording of Chief Modica stating in part the following:

"My biggest thing is I'm going after George and Freddie Arias and all those groups that once I get a Federal charge hanging over their head and deportation or Federal prison time, they're not going to think twice to turn around and say, "There's my dirty cop to save my skin."

**FIFTY-SEVENTH:** Lieutenant Richard Oleszczuk further conspired with Chief Modica to induce Police Officer John Vespucci to prepare a false police report as documented in the May 2007 tape-recording which was an attempt in part to induce Plaintiff to confirm a false business record that would have been filed

19

by      Officer John Vespucci at the direction of Chief Modica.  Chief Modica stated the following during such events:

"So it's actually like a police report, but I'm giving you permission to give me that false police report.  See if he does the same report as you do."

**FIFTY-EIGHTH:**      Chief Modica also made derogatory remarks about the Spanish residents of Spring Valley and referred to them as "beaners".

### Lieutenant John Bosworth.

**FIFTY-NINTH:**      Lieutenant John Bosworth in furtherance of acts of discrimination and retaliation against the Plaintiff and as an agent of Paul Modica and in further efforts to advance the operations of the racketeering enterprise, tampered with evidence by altering an official record of The Department.  Such conduct involved altering an audio tape of police recordings on the night of August 14, 2004 by eliminating all references to the time of day on each recording and replacing the same with a continuous time marker in order to prevent the Plaintiff from establishing the inaccuracy of testimony of Police Officer John Vespucci and underling and agent Joseph Houston with regard to alleged conduct of the Plaintiff on said date.

**SIXTIETH:**    Lieutenant Bosworth altered and destroyed this evidence and thereby obstructed justice and prevented Plaintiff from proffering the falsity of other statements by Police Officer John Vespucci at the Grand Jury and Administrative Trial and Joseph Houston at County Court and Administrative Trials.

**Detective Sergeant Derek Savino.**

**SIXTY-FIRST:**        Said individual together with Sergeant James Noble

conspired to withhold evidence from the criminal trial against the Plaintiff in

October 2008 and said individual further conspired to withhold said evidence

regarding allegations that Plaintiff improperly transported Joseph Huston in his

marked patrol vehicle from administrative proceedings against the Plaintiff that

were begun in May 2009 and continued  through the present.  The focus of the

efforts of Sergeant Savino and Sergeant Noble involved attempting to have a

witness, Vera Houston, deny the existence of taped conversations between Ms.

Houston and the Plaintiff DAVID LEBRON.

**SIXTY-SECOND:**    The Defendant Department and the racketeering

enterprise controlled by Chief Modica sought to elicit incriminating evidence and

admissions from the Plaintiff by tape recording various conversations and

telephone calls made to the Plaintiff or conducted with the Plaintiff.

**SIXTY-THIRD:**        Plaintiff is aware of two such calls and upon information

and belief additional calls and tape-recordings exist.  The statements by plaintiff

and Vera Houston on the dates that such telephone calls were tape recorded

constitute material evidence supporting statements and versions of events by the

Plaintiff.  As such, they constituted exculpatory evidence that should have been

turned over during all proceedings against the Plaintiff, both criminal and

administrative.  Detective Savino sought to intimidate the witness and otherwise

obtain the cooperation of the witness Vera Houston so that she would deny the

existence of any other tape-recorded conversations other than the one tape-

21

recorded conversation acknowledged by the Defendants to have been made involving the Plaintiff DAVID LEBRON.[1]

**Detective Roxanne Lopez.**

**SIXTY-FOURTH:**    Over the course of time, Detective Rosanne Lopez and Police Officer Oscar Lopez became indebted to the Village of Spring Valley and its Police Department as follows:

a.    In or about 2006, upon information and belief, Detective Roxanne Lopez's husband, Jonathan Beltempo, a Spring Valley Police Officer, was arrested in the State of Maryland for allegedly menacing a bar patron with a gun.

b.    Upon information and belief then Lieutenant Modica drove to Maryland and secured Officer Beltempo's release from custody.  Officer Beltempo was not disciplined by Lieutenant Modica (then second in command) or Chief Furco.

**SIXTY-FIFTH:**    In October 2007 Detective Lopez prepared a false witness statement in the name of Rosa Sabelos, an individual who did not read or speak English.  Detective Lopez spoon fed information to Daniel Gomez.  Said statement contained false information regarding criminal charges of sexual misconduct that would later be brought against the Plaintiff.

**SIXTY-SIXTH:**    In or about October 2007 Detective Roxanne Lopez conspired with Oscar Lopez and attempted to bribe a local bar owner, Freddie Aris,

---

[1] The foregoing constitutes a pattern and practice of the Village of Spring Valley and the individual Defendants to conceal, withhold, destroy, spoliate and otherwise conceal material evidence, as well as to fabricate evidence against the Plaintiff DAVID LEBRON in an attempt to silence him and get him to drop his claims of discrimination, retaliation and other improper conduct constituting violations of the civil rights and constitutional rights of victims  against whom false testimony was proffered or false charges were made by the Defendants in various cases  brought by The Department.

into making a false statement against Plaintiff alleging that Aris had lent Plaintiff
$5,000.00 to purchase a property in the Dominican Republic.

**SIXTY-SEVENTH:**  Detective Lopez and Oscar Lopez promised Freddie
Aris assistance in securing a recently revoked liquor license if they would make the
above allegation against Plaintiff.

Detective Lopez and Oscar Lopez also conspired with others to withhold
written notes (Rosario material) pertaining to this interview.

**SIXTY-EIGHTH:**     Detective Lopez together with Oscar Lopez conspired
and attempted to bribe local bar owner, Daniel Monzon, into making a false
statement against Plaintiff, that he observed Plaintiff drinking beer in uniform.
Detective Lopez and Oscar Lopez had promised Daniel Monzon assistance in
securing a recently revoked liquor license if he would make the aforesaid allegation
against Plaintiff.

Detective Lopez and Oscar Lopez then conspired with others to withhold
written notes (Rosario material) pertaining to the interview of Daniel Monzon.

**SIXTY-NINTH:**     On May 17, 2007, Spring Valley Police Department
arrested Cheryl Flores for a narcotics charge.  On the same day Detective
Roxanne Lopez and perhaps others induced Cheryl Flores to sign a witness
statement against David Lebron which statement was false.  It is believed that
certain promises were made to Cheryl Flores at that time to induce her to give
false testimony against the Plaintiff.

**SEVENTIETH:**     Thereafter, the defendants and the Rockland County
District Attorney Office provided the Plaintiff and his criminal counsel with, what

purported to be Rosario material.  This material included a rap sheet of Cheryl Flores.  The rap sheet mysteriously did not include the May 17, 2007 arrest of Cheryl Flores.

**SEVENTY-FIRST:**   In October, 2007, Detective Roxanne Lopez and Oscar Lopez confronted a civilian, Juan Carlos Denjunea and coerced Mr. Denjunea into changing a statement he had earlier provided to the Spring Valley Police Department concerning a civilian complaint he had made against Oscar Lopez. This tampering with a witness resulted in Mr. Denjunea signing the coerced statement, all of which resulted in the Spring Valley Police Department bringing a charge against David Lebron for falsifying a business record for which Mr. Lebron was arrested, prosecuted and acquitted.

### Detective Edward Hughes.

**SEVENTY-SECOND:**        On or about March 2007 Detective Hughes and perhaps others visited civilian Sirjan Salazar and coerced Mr. Salazar into providing a false witness statement against Plaintiff.  Said statement included information that Plaintiff had told Mr. Sirjan Salazar that on a prior occasion he had lent his police issued baton to Joseph Houston so that Mr. Houston could assault a third party in the presence of Officer Lebron.

**SEVENTY-THIRD:**  In consideration of coercing Mr. Salazar's false statement Officer Hughes and perhaps others used leverage they had concerning the then incarceration of Jessica Ramirez who was Mr. Salazar's sister-in-law, as well as the fact that Spring Valley then had pending criminal charges against Sirjan Salazar's brother, Edward Salazar.

24

**SEVENTY-FOURTH:**    This allegation was contained in one of the many administrative charges brought against David Lebron.

**SEVENTY-FIFTH:**  In about October 2007 Detective Hughes and then Police Officer Noble approached local restaurant owner, Edgar Mazariegos, and encouraged him to make false allegations against David Lebron.  At that time Mr. Mazariegos, as owner, had pending certain State Liquor Authority violations pending.  Officers Hughes and Noble promised Mr. Mazariegos assistance in fighting the State Liquor Authority violation if he would provide false testimony against David Lebron.

**SEVENTY-SIXTH:**  Specifically, Detective Hughes and Officer Noble attempted to have Mr. Mazariegos state that they were aware that David Lebron was transporting female employees of his restaurant around town in his police car. Mr. Mazariegos did not agree to provide false information.

**SEVENTY-SEVENTH:**    Soon thereafter Mr. Mazariegos lost his liquor license for the restaurant.

**SEVENTY-EIGHTH:**    In or about April or May of 2008 Detective Hughes together with Officer Noble coerced civilian Juan Carlos Denjunea to sign a false statement which they intended to use as evidence against David Lebron either in Rockland County Court or as part of an Administrative prosecution.

**SEVENTY-NINTH:**  Specifically, Detective Hughes and Officer Noble had Juan Carlos Denjunea sign a statement that an earlier statement he had provided to David Lebron had not been read to him by David Lebron but he signed it.  There

does exist a video tape whereby Juan Carlos Denjunea denies that charge and he affirms that David Lebron did in fact read him the statement before he signed it.

**Sergeant James Noble**.

**EIGHTIETH:**     The Plaintiff repeats and reiterates those allegations set forth above wherein the identity of James Noble as a Sergeant or a Police Officer is mentioned as acting in concert with others to violate the civil rights of David Lebron.

**EIGHTY-FIRST:**     In or about October of 2008 during the criminal trial of David Lebron in Rockland County Court preceded over by Judge Catherine Bartlett, the prosecutor was permitted and/or directed to amend the Bill of Particulars to more specifically detail the dates in which the prosecutor claimed David Lebron engaged in various acts allegedly amounting to conspiracy.

**EIGHTY-SECOND:**     At David Lebron's Administrative trial Detective Noble testified that it was he who prepared the amended Bill of Particulars during the David Lebron criminal trial and did so with the assistance of witness, Joe Houston, who Sergeant Noble claims was physically present in his office several days before Joe Houston testified at the criminal trial.  On or about August 2009 Sergeant Noble provided false testimony at the Administrative hearing regarding David Lebron.

**EIGHTY-THIRD:**     Sergeant Noble produced counterfeit documentation purporting to be a document generated by the Drug Enforcement Agency of the United States of America.

26